UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF
THE EXTRADITION OF ) Hon. Bernard G. Skomal
ALEX DION ) Misc. No. 18-mj-4867-BGS
aka Ahmad Arnaout )

## CERTIFICATION AND COMMITTAL FOR EXTRADITION

This is a proceeding under 18 U.S.C. § 3184 pursuant to a request by the Government of Australia (hereafter "Australia") through the United States Government (hereinafter "United States") for the extradition from the United States to Australia of Alex Dion, aka Ahmad Arnaout (hereinafter "Dion"), a United States citizen, under the provisions of the Extradition Treaty Between the United States of America and Australia, May 14, 1978 (hereinafter "Treaty"). Australia seeks to extradite Dion to answer a charge of murder of Wachira Phetmang (hereinafter "Phetmang") in violation of section 18(1)(a) of the Crimes Act 1900 of New South Wales.

For the reasons set forth below, the Court **GRANTS** the request for extradition and **CERTIFIES** Dion as extraditable.

### I.     Background

On September 11, 2018 the Court issued an arrest warrant for the arrest of Dion pursuant to a complaint filed by the United States on behalf of the Australia

1

under the Treaty.  Dion was arrested on September 21, 2018, and made his initial appearance on September 24, 2018 before this Court.  This Court thereafter held the extradition hearing on January 29, 2019.  In support of extradition, on October 23, 2018 the Embassy of Australia submitted documents, which the United States has filed with the Court.  (Doc. 19).  The United States filed Memorandum of Law in Support of Extradition. (Doc. 21).  Dion through counsel filed Opposition to Extradition in which he stated that Dion does not have any substantive or procedural challenges to the United States' pleadings. (Doc. 22).

## II.     Requirements of Certification

### A.     Court's Jurisdiction

The undersigned judicial officer is authorized under 18 U.S.C. § 3184 and Criminal Local Rule 57.4(a)(3) to conduct extradition proceedings.

### B.     Jurisdiction Over the Fugitive

This Court has personal jurisdiction over Alex Dion ("Dion") found and arrested on September 21, 2018 in this District pursuant to a complaint filed by the United States in response to the request of Government of Australia for the arrest and extradition of Dion.  See 18 U.S.C. § 3184 (Court "may, upon complaint made under oath, charging any person found within his jurisdiction…issue (its) warrant for the apprehension of the person so charged.").

### C.     Treaty in Full Force and Effect

The extradition treaty between the United States and the Government of Australia, Treaty on Extradition Between the United States of America and Australia, U.S.-Austl. May 14, 1974, 27 U.S.T. 957, as supplemented and amended by the Protocol Amending the Treaty on Extradition Between the United States of America and Australia, signed at Seoul on September 4, 1990, entered into force on December 21, 1992 was in full force and effect at all times relevant to this

action.  The Government has provided a declaration from Mariano Banos, an attorney in the Office of the Legal Adviser for the Department of State, attesting that there is a treaty in full force and effect between the United States and Australia. (Doc. 19 at 1-3).  Ms. Banos' opinion is entitled to deference.  See Kolovrat v. Oregon, 366 U.S. 187, 194 (1961) (stating that opinion of State Department on meaning given to treaty is given great weight).

**D.     Crime Covered by the Treaty**

In determining whether the subject crime is an extraditable offense, the Court must find that an extradition treaty exists between the United States and Australia, and that the crime charged is covered by the treaty. Vo v. Benov, 447 F.3d 1235, 1237 (9th Cir. 2006) (citing 18 U.S.C. § 3184).  Article II of the treaty defines offenses as extraditable if the criminal conduct is punished under the laws of both the United States and Australia by a deprivation of liberty for a maximum of at least one year or by a more severe penalty.

The documents submitted by Australia establish that the fugitive has been charged in Australia with the crime of murder in violation of section 18(1)(a) of the Crimes Act 1900 of New South Wales.  Murder is included in the list of extraditable offense under Article II. (Doc. 19 at 10) and is punishable for life or 25 years.  (Doc. 19 at 74).   Additionally, the Banos Declaration provides, "The offense for which extradition is sought is covered under Article II of the 1974 Extradition Treaty, as amended by Article 1 of the 1990 Protocol."  (Doc. 19 at 3). Again, Ms. Banos' opinion is entitled to deference.

Article II of the Treaty also contains a dual criminality requirement.  Under the principle of dual criminality, "no offense is extraditable unless it is criminal in both jurisdictions." Caplan v. Vokes, 649 F.2d 1336, 1343 (9th Cir. 1981) (citing Collins v. Loisel, 259 U.S. 309, 312 (1922)).  "It is well established that all the

3

principle of dual criminality requires is that the particular acts alleged constitute a crime in both jurisdictions." Emami v. U.S. Dist. Court, 834 F.2d 1444, 1450 (9th Cir. 1987). "The name by which the crime is described in the two countries need not be the same, nor need the scope of the liability for the crimes be either coextensive or the same in both countries." Id. (citations omitted). Instead, "dual criminality exists if the 'essential character' of the acts criminalized by the law of each country are the same and if the laws are 'substantially analogous.'" Theron v. United States Marshal, 832 F.2d 492, 496 (9th Cir. 1987) (quoting Wright v Henket, 190 U.S. 40, 58 (1903)), abrogated on other grounds by United States v. Wells, 519 U.S. 482 (1997). In assessing dual criminality, the extradition magistrate judge may consider, in order of preference, similar criminal provisions of federal law, similar laws of the state in which the fugitive was found, and the law of the preponderance of the states. Id.

Dion's is charged pursuant to Paragraph 18(1)(a) of the Crimes Act which provides in pertinent part that "[m]urder shall be taken to have been committed where the act of the accused…causing the death charged, was done or omitted with reckless indifference to human life, or with intent to kill or inflict grievous bodily harm upon some person." (Doc. 19 at 74). This charged offense of murder is analogous to the crimes of murder and manslaughter in the United States. See 18 U.S.C. § 1111 (murder); 18 U.S.C. § 1112 (manslaughter). Under § 1111, one found guilty of murder shall be punished "by death or by imprisonment for life" (first degree murder) or "shall be imprisoned for any term of years or for life" (second degree murder). § 1111(b). Under § 1112, one found guilty of voluntary manslaughter shall be fined "or imprisoned not more than 15 years, or both," and one found guilty of involuntary manslaughter shall be fined "or imprisoned not more than 8 years, or both." § 1112(b); see also Cal. Penal Code §187 (Murder

4

Defined), 189 (Murder degrees), and 190 (Punishment for murder). These listed offenses satisfy the Treaty's duality requirement.

**E.     Probable Cause that Fugitive Committed the Offense**

The authority of a magistrate judge serving as an extradition judicial officer is limited to determining an individual's eligibility to be extradited, which is done by ascertaining (1) whether the crime is an extraditable offense under the subject treaty and (2) whether probable cause exists to sustain the charge. Vo, 447 F.3d at 1237. If the judge determines that these requisite elements have been met, the findings are incorporated into a certificate of extraditability. Id. The certificate is forwarded to the Department of State. The Secretary of State makes the ultimate decision on whether to surrender the individual to the requesting country. 18 U.S.C. § 3186.

The central function of the extradition magistrate judge "is to determine whether there is competent evidence to justify holding the accused to await trial [in the requesting state,] and not to determine whether the evidence is sufficient to justify a conviction." Collins, 259 U.S. at 316; Hooker v. Klein, 573 F.2d 1360, 1367; see also United States v. Wiebe, 733 F.2d 549, 553 (8th Cir. 1984) ("The extradition hearing is not a trial on the merits to determine guilt or innocence, but serves as a means of ensuring that probable cause exists to believe the person whose surrender is sought has committed the crime for which his extradition is requested."). "The probable cause standard applicable in extradition proceedings is defined in accordance with federal law and has been described as 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" Wiebe, 733 F.2d at 553 (citation omitted). "The judicial officer who conducts an extradition hearing 'thus performs an assignment in line with his or her accustomed task of determining if

there is probable cause to hold a defendant to answer for the commission of an offense.'" Lo Duca v. United States, 93 F.3d 1100, 1104 (2nd Cir. 1996) (quoting Ward v Rutherford, 921 286, 287 (D.C. Cir. 1990)).

### 1. **Admissibility of Evidence**

The admissibility of evidence in extradition matters is controlled by 18 U.S.C. § 3190, which provides as follows:

> Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

18 U.S.C. § 3190; Escobedo v. United States, 623 F.2d 1098, 1103 (5th Cir. 1980) (finding § 3190, not state law, controls admissibility). "[A]uthentication is the only requirement for admissibility of evidence under general United States extradition law." Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1406 (9th Cir. 1998); see also Zanazanian v. United States, 729 F.2d 624, 627 (9th Cir. 1984). The Supreme Court has found that extradition may be predicated entirely on the "unsworn statements of absent witnesses." Collins, 259 U.S. at 317. Indeed, both sworn and unsworn statements contained in properly authenticated documents are permissible. Artukovic v. Rison, 784 F.2d 1354, 1356 (9th Cir. 1986). Additionally, hearsay evidence is permitted in extradition proceedings. Then v. Melendez, 92 F.3d 851, 855 (9th Cir. 1996); Escobedo, 623 F.2d at 1102 n.10. This includes multiple hearsay. See Escobedo, 623 F.2d at 1102 (permitting written third-party account of deposition testimony); Zanazanian, 729 F.2d at 627 (permitting police report describing a witness statement).

Here, the documents submitted by the United States on behalf of Australia were properly authenticated under § 3190 by James Carouso from the United States Embassy in Australia attesting to the authenticity of the foreign official's signature. At the extradition hearing, Dion stated he had no objection to their admissibility. As long as there is no conflict with the provisions of the subject treaty, evidence that has been authenticated is admissible in extradition proceedings. Emami, 834 F.2d at 1451. Article XI of the Treaty addresses the required submissions by Australia, and the Court finds that there is no such conflict. Therefore, under the general extradition law of the United States and the provisions of the Treaty, all of the documents submitted by the United States on behalf of Australia are admissible for purposes of this extradition proceeding.

### 2. **Identity**

"At an extradition hearing, the court is required to determine whether the party before the court is the party named in the extradition complaint." Manta v. Chertoff, 518 F.3d 1134, 1143 (9th Cir. 2008) (citation omitted). "Whether the person before the court is the accused is part of the magistrate judge's probable cause analysis." Id. (citation omitted). There must be "competent proof" of identity. Id. "[T]he credibility of the reported identification is a matter committed to the magistrate [judge]." Id. at 1145 (citation omitted). "There is no *per se* rule that specifies which identification procedures are competent for probable cause purposes." Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986). "An identification based on a single photograph may be competent evidence of identity in an extradition proceeding." Manta, 518 F.3d at 1145 (citation omitted).

There is probable cause to believe that the fugitive appearing before this Court is Dion, the person named in the extradition request and accompanying documents. Dion at the hearing raised no objection to his identify or the

7

documents submitted to so prove. Those include a full physical description of him which resembles that same description of Dion as viewed by this court at the hearing and at previous in court proceedings; a photograph taken of him at the Sydney International Airport on 27 May 2018 which also in the Court's estimation is Dion; statement of the Border Force officer who extracted this photo of Dion and confirmed that the person in the photo cleared immigration under the name Alex Dion; a photo of Dion uploaded from the Facebook page of Ahmad Arnout, the name given Dion at birth, which appears to be the fugitive Dion in court; Dion's employer and flat mate, El-Anani, identified the man depicted in surveillance photos as the fugitive Dion, as well as other evidence. (Doc. 19 at 61-72).

Given the plethora of evidence cited above as to identity, the Court accordingly finds there is probable cause to believe that the Dion named in the request for extradition and the person brought before this Court on the Complaint for Extradition are one and the same person.

### 3. **Probable Cause Dion Committed Murder**

Dion is charged with the murder of Phetmang under Paragraph 18(1)(a) of the Crimes Act. At the extradition hearing Dion offered no evidence or opposition to the facts alleged by Australia in its documents. In fact Dion offered no argument in opposition other than to state the evidence was circumstantial and he was contesting extradition. The United States submitted the matter of probable cause on the documents submitted by Australia. The Court took the matter under submission.

Given Dion does not dispute or object to the facts as detailed in the documents submitted by Australia in support of his extradition, the Court adopts those facts in those documents in making its probable cause determination.

Specifically, the Court adopts the facts in the Affidavit of New South Wales Detective Sergeant Richard Michael Howe, which details the facts relevant to probable cause in this matter. (Doc. 19 at 51-72). Based on these undisputed facts, the Court finds probable cause to believe that between Friday, 25 May 2018 and Sunday, 27 May 2018 Dion murdered Wachira Phetmang by inflicting over 20 wounds to his head resulting in fatal head injuries. Dion disposed of Phetmang's body in bush adjacent to Homebush Bay Drive in Sydney Olympic Park in Sydney and later disposed of certain items of Phetmang's clothing and possessions at a building site in East Killara in Sydney. Dion then departed Australia for the United States on 27 May 2018 in possession of Phetmang's mobile phone and credit cards. Thereafter in June 2018 Dion attempted to use Phetmang's credit cards in the United States and Tijuana.

The Affidavit of New South Wales Detective Sergeant Richard Michael Howe establishes that Dion and Phetmang were together on 25 May 2018 via CCTV footage and Phetmang's Google account's recording of his movements via his mobile phone. Dion's mobile phone was also captured at cell towers on 27 May 2018 in the Homebush Bay area, in close proximity to where the body of Phetman was later located. About 45 minutes later on 27 May 2018 Dion's mobile phone activated cell towers in the East Killara area of Sydney. This is the same location where the police later discovered Phetmang's hidden personal property as well as property related to Dion.

In June 2018 pursuant to a search warrant of Dion's residence and vehicle, the police seized one of Dion's work boots which matched the other that was found under the body of Phetmang, and sheets of black corflute plastic identical to those that were wrapped around Phetmang's body. There is probable cause to find that

Dion's DNA was found on one of the rope bindings tied around the black corflute plastic surrounding Phetmang's body, and on the knotted blue and white T-shirt that was tied around Phetmang's wrists.   The DNA sample was obtained from cigarette butts seized at Dion's apartment and which El-Anani informed the police belonged to Dion.   Phetmang's property was found in garbage bags located at Redfield Road, East Killara, Sydney.  This is a property under construction at which Dion worked as a tiler.  At that same site the police found trousers identified as those worn by Dion in the 25 May 7-Eleven CCTV footage, documents in the name of Dion's wife, black colored material similar to that located around Phetmang's ankles, two tyre levers and a metal bar. These items were first located by a construction worker on 28 May 2018 inside a water retention tank underneath a garage at the property.  Traces of Phetmang's DNA and blood were found on the trousers.

The physical evidence along with the detailed statement of unopposed facts provided in the Affidavit of New South Wales Detective Sergeant Richard Michael Howe provide the Court with more than ample evidence to establish probable cause that Dion committed the charged offense of murder of Phetmang.

## III. <u>Conclusion</u>

THEREFORE, pursuant to 18 U.S.C. § 3184, the above findings, I certify the extradition of the Fugitive, Alex Dion, aka Ahmad Arnaout, to Australia, on the offense for which extradition was requested, and commit the Fugitive to the custody of the United States Marshal pending further decision on extradition and surrender by the Secretary of State pursuant to 18 U.S.C. § 3186.

I further order that a certified copy of this Certification and Committal for Extradition and Order of Commitment be forwarded without delay by the Clerk of

Court to the Department of State, to the attention of the Office of the Legal Advisor.

**IT IS SO ORDERED**.

Dated: February 14, 2019

_____
Hon. Bernard G. Skomal
United States Magistrate Judge